1. BANKS AND BANKING ☞139—PAYMENT OF CHECKS—REVOCATION BY DEATH.
     A bank, which pays checks after the death of the drawer with no knowledge of his death, is not liable for the amount thereof.
     [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ☞139.]

2. BANKS AND BANKING ☞140—CHECKS—RIGHTS OF HOLDER BEFORE PAYMENT.
     The giving of a check does not operate to transfer the amount thereof from the depositor to the holder of the check until it has been accepted by the bank.
     [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 380–392, 394–397; Dec. Dig. ☞140.]

3. BANKS AND BANKING ☞139—PAYMENT OF CHECKS—REVOCATION BY DEATH.
     The death of the drawer of a check revoked the payee's authority to draw the money thereon, and such money paid the payee by the bank remained the property of the estate of the drawer.
     [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ☞139.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. EXECUTORS AND ADMINISTRATORS ⬡══294—COLLECTION OF ASSETS—BURDEN OF PROOF.

On objections to a contemplated payment of a legacy by an executor, on the ground that the legatee had received money belonging to the estate in the amount of the legacy, where it was shown that she received such amount on checks drawn by the testator prior to his death, the burden was on her to show that she had a right to retain such money, and, where she failed to show a valuable consideration for the checks, the amount so received was properly set off against the legacy.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1169–1184; Dec. Dig. ⬡══294.]

5. EXECUTORS AND ADMINISTRATORS ⬡══221—DISPUTED CLAIMS—SUFFICIENCY OF EVIDENCE.

On the trial of a claim against an estate for nursing the decedent and attending on him during his sickness prior to his death, evidence *held* insufficient to show an agreement to pay the claimant therefor, in addition to the amount paid her for room and board.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. ⬡══221.]

In the matter of the estate of John Stacey. On exceptions to referee's report. Report modified and confirmed.

Robert J. Culhane, of New York City, for petitioner.

Timothy Power, of New York City (James H. Goggin, of New York City, of counsel), for executor.

J. Edward Murphy, of New York City, for Emma L. Boyle.

Matthew P. Breen, Jr., of New York City, special guardian.

FOWLER, S. The record before the referee was somewhat informal, but I think that his general conclusion is justifiable and not inconsistent with justice. The exceptions to the referee's report bring up for consideration the correctness of his findings upon the questions presented by the objections to the account of the executor. These so-called objections were not in reality objections to the account, because the payments objected to had not been made by the executor; they were rather objections to the contemplated payment by the executor of claims against the estate. The legatees contend that the executor should not pay Mary E. Joyce a legacy of $500 given to her in the will of the testator, and they also object to the allowance of her claim against the estate for $1,650. They contend that Mary E. Joyce is not entitled to the legacy because since the death of the testator she has obtained and still retains possession of the sum of $500, which was part of decedent's estate at the time of his death. Therefore the questions presented to the referee for determination were: First, did Mary E. Joyce receive $500 which at the date of decedent's death constituted a part of his estate? Second, should her claim against the estate for the sum of $1,650 be allowed by the executor?

The decedent died on May 7, 1912. Prior to his death he had an account in the Harlem Savings Bank and an account with Clark Bros., bankers. On May 8, 1912, Mary E. Joyce presented to Clark Bros. a check drawn on them for $300, dated April 6, 1912, signed by the

testator and payable to her. The amount of the check was paid to her. On May 9, 1912, she presented to the Harlem Savings Bank a check drawn on that bank for $200, signed by the testator and payable to bearer. This check was indorsed by Mary E. Joyce and paid by the bank. The amount of each of these checks was charged by the respective banks on which they were drawn to the account of the testator. The referee found there was no evidence that the testator gave these checks to Mary E. Joyce, or that there was any consideration for the checks, and that the money therefore belonged to the estate of the testator, and that the executor should set off the legacy of $500 given by the testator to Mary E. Joyce against the claim of the estate against her for the amount of the two checks.

[1, 2] No question is raised in this proceeding as to the right of the banks to pay the checks, and no evidence was introduced to show whether the banks had notice of the death of the testator at the time the checks were presented for payment. In the absence of objections by the legatees, it will be presumed that the executor's failure to proceed against the banks was due to the fact that the banks had no knowledge of the death of the testator at the time the checks were paid, in which case no recovery could be had against them. Glennan v. Rochester Trust Co., 209 N. Y. 12, 102 N. E. 537, 52 L. R. A. (N. S.) 302. The giving of a check does not operate to transfer the amount therein mentioned from the depositor to the holder of the check until it has been accepted by the bank. Ætna Nat. Bank v. Fourth Nat. Bank, 46 N. Y. 87, 7 Am. Rep. 314; Attorney General v. Continental Life Ins. Co., 71 N. Y. 325, 27 Am. Rep. 55; Risley v. Phœnix Bank, 83 N. Y. 318, 38 Am. Rep. 421. As the checks were not presented to the banks by Mary E. Joyce until after the death of the testator, there was no acceptance of the checks during his life and therefore no valid assignment of the funds represented by them.

[3, 4] But while the banks, in the absence of notice of the death of the testator, would be protected in making payments to Mary E. Joyce as holder and payee of the checks, her authority to draw the money was revoked by the death of the testator. Fordred v. Seamen's Sav. Bank, 10 Abb. Prac. (N. S.) 425; Long v. Thayer, 150 U. S. 520, 14 Sup. Ct. 189, 37 L. Ed. 1167. She therefore had no authority to draw the money after the death of the testator; it constituted a part of testator's estate, and the fact that the banks paid it to Mary E. Joyce did not confer upon her any right to its possession. If she had not cashed the checks, but had filed a claim against the estate for the amount represented by them, she would be entitled to recover, unless the executor could show that they were not given for a valuable consideration. But in the proceeding before the referee she not only failed to put the checks in evidence, but she refused to admit that the checks were drawn by the testator or that they were paid to her. The evidence submitted by the objecting legatees was, in my opinion, sufficient to show that the checks bore the signature of the testator and that they were indorsed by Mary E. Joyce, the claimant, and paid to her; that the testator had on deposit with the Harlem Savings Bank at the time of his death more than $200 and with Clark Bros. more than $300; and that

subsequent to his death the sums of $200 and $300 respectively were paid by the banks to Mary E. Joyce as the holder and payee of certain checks drawn by the testator prior to his death. This proof established their prima facie case. It was then incumbent upon Mary E. Joyce to put the checks in evidence for the purpose of proving her counterclaim and establishing her right to retain the $500 received from the banks. She, however, failed to do this, or to offer any proof in support of her claim. She therefore failed to prove her counterclaim against the estate, and the referee was correct in holding that the executor may set off the legacy of $500 given to Mary E. Joyce in the will of the testator against the $500 received by her from the banks after his death.

[5] Mary E. Joyce filed a claim against the estate for the sum of $1,650, alleged to be due her on a contract with the testator for nursing him and attending on him. All the parties interested had filed a consent that the surrogate may pass upon this claim.

The testator was sick for about a year prior to his death, although he was not confined to his bed until about two weeks before he died. Mary E. Joyce, the claimant, was his niece, and he lived in her house and paid her $8.25 per week for room and board. A daughter-in-law of the claimant testified to a conversation between the claimant and the testator in which he is alleged to have said that he would pay Mary E. Joyce, the claimant, $25 a week for nursing and caring for him. This testimony was not corroborated. The provision in the testator's will which provides for the bequest to Mary E. Joyce reads as follows:

"I hereby bequeath to my beloved niece, Mary E. Joyce, the sum of $500 for her faithful attention to me during my illness."

This is some evidence of an intention on the part of the testator to compensate Mary E. Joyce for the care and attention which she bestowed upon him by giving her a legacy of $500. I agree with the learned referee that the claimant has not proved her case by that preponderance of evidence which the law requires when claims based upon a parol contract with the decedent are sought to be enforced against his estate. Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; Roberge v. Bonner, 185 N. Y. 265, 77 N. E. 1023; Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364.

The learned referee's conclusion of law No. 1 should read as follows: That the legacy of $500 given by the testator to Mary E. Joyce should be set off against the $500 obtained by her on his checks after his death.

As modified, the referee's report is confirmed. Settle decree and tax costs on notice.